## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

HEATH CAMPBELL,

    **Plaintiff,**

**v.**

**SKYWARD LLC,** *et al.***,**

    **Defendants.**

**Case No.  5:24-cv-854-HDM**

## MEMORANDUM OPINION AND ORDER

Plaintiff Heath Campbell alleges that Defendants Skyward LLC ("Skyward") and Aqua Systems Alabama LLC ("Aqua Systems") discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (the "ADA"). This case is before the court on Defendants' Motion for Summary Judgment, in which the sole issue is whether Mr. Campbell's employer had the requisite number of employees to render it subject to the ADA. (Doc. 37).

It is undisputed that Mr. Campell was employed by Skyward at all times relevant to his complaint. At oral argument on January 20, 2026, Skyward "stipulat[ed] that there is an issue of fact as to the [employee] head count," because Mr. Campbell "identified an additional week in which the [Skyward] payroll showed that there were 15 employees." Transcript of Oral Argument, 3:25–4:4. Accordingly, because there is a genuine dispute of material fact as to whether Skyward, Mr.

Campbell's employer, had the requisite number of employees to be covered by the ADA, the court **DENIES** the motion for summary judgment as to Defendant Skyward.

Defendant Aqua Systems maintains its motion for summary judgment. The only remaining question for the court's consideration is whether Aqua Systems and Skyward are, collectively, an "integrated enterprise," such that the number of employees between the two companies should be considered in determining whether Mr. Campbell's employer, Skyward, had the requisite number of employees to be covered by the ADA.

## STATEMENT OF THE FACTS

Mr. Campbell, a former employee of Skyward, brings a discrimination claim under the ADA. Specifically, he contends that Skyward terminated him due to his ongoing health conditions in violation of the ADA. (*See* Doc. 20). Skyward and Aqua Systems move for summary judgment on the grounds that Skyward did not have enough employees to be covered as an employer under the ADA, and Skyward and Aqua Systems are not a single or integrated employer.[1]

---

[1] Skyward and Aqua Systems only move for summary judgment on these grounds. For this reason, the court does not analyze the underlying merits of the claim apart from whether the defendants qualify as an "employer" under the ADA.

Facts set forth in the parties' statement of material undisputed facts are deemed admitted for summary judgment purposes unless controverted by the response or reply of the opposing party. Any justifiable inferences are drawn in favor of the plaintiff as the nonmovant. These are the undisputed material facts and any disputes of material facts:

**Factual Background as to Aqua Systems**

In 1999, non-parties Tonja and Chris Sims started Birmingham Water Solutions, a company that sold and serviced water filtration systems in Alabama. (Doc. 39-1 at 13). In 2017, to facilitate a switch to the "Aqua Systems" brand of filtration systems, Tonja Sims started Jorco, LLC d/b/a Aqua Systems, with herself as the sole owner. *Id.* at 15–16. Aqua Systems is in the business of selling and servicing water filtration systems, *id.* at 15, and it does not perform any general plumbing services, *id.* at 19. Aqua Systems's only office is in Pelham, Alabama. *Id.* at 21.

**Factual Background as to Skyward**

In 2022, Chris Sims purchased a majority ownership interest in Chandler-Wise Services, LLC, a heating, cooling, and plumbing company in Decatur, Alabama, that later changed its name to Skyward. *Id.* at 17–18. Mr. Sims acquired a seventy percent ownership share in Skyward, while the company founders, Gary Wise and Hollis Chandler, each retained a fifteen percent ownership share. *Id.* at 17.

Skyward's only office is in Decatur, Alabama. *Id.* at 19. Plaintiff Heath Campbell worked as a plumber for Skyward from August 29, 2022, to March 24, 2023. *Id.* at 29, 48.

**Relationship between Aqua Systems and Skyward**

Tonja and Chris Sims are both paid by Aqua Systems, but not Skyward. (Doc. 39-1 at 17; Doc. 42-3 at 8). Mr. Sims is the president of both companies. (Doc. 39-1 at 23). Mr. Sims has the authority to sign contracts for both Skyward and Aqua Systems, and he oversees the financial operations of both companies. *Id.* He also has final say over what money is spent by both companies, a responsibility that he shares with Ms. Sims as to Aqua Systems. *Id.* With the assistance of managers, Mr. Sims oversees hiring decisions at both companies and sets wages for the employees at both companies. *Id.* at 23, 27.

Aqua Systems and Skyward do not have any common bank accounts, and they maintain separate accounts and lines of credit with different banks. *Id.* at 27. Mr. Sims is on the bank accounts for both companies. *Id.* at 23. Each company maintains its own general liability and worker's compensation insurance through different insurance companies. *Id.* at 27–28. Aqua Systems and Skyward do not share any equipment, computers, or vehicles. *Id.* at 26. The accounting records of the two companies are maintained separately. (Doc. 39-3, ¶ 4). Each business has its own tax identification number and files its own tax returns. *Id.* ¶ 5. Aqua Systems and

Skyward both use ADP, a payroll firm, to administer their payrolls, but the companies have their own, separate accounts with ADP. (Doc. 39-4 at 35).

Aqua Systems provides loans to Skyward for various expenses, (doc. 39-4 at 16), and Mr. Sims estimates that Skyward currently owes Aqua Systems $300,000.00, (doc. 39-1 at 31). Furthermore, Aqua Systems issues credit cards to Skyward employees to allow them to purchase gas for their Skyward-owned vehicles. *Id.* at 32. The amount Skyward "owes" to Aqua System for this gas is tracked, and Skyward repays it as it is able. *Id.*

Employees of Aqua Systems do not work out of the Skyward office in Decatur, *id.* at 19, but at least one Skyward employee works out of Aqua Systems's office in Pelham full time. *Id.* at 21. Skyward does not pay any rent or fee to allow its employees to work out of Aqua Systems's office. *Id.* Skyward has sold and installed Aqua Systems products. (Doc. 42-2 at 6).

Amy Parrish, the former accounting manager and current human resources manager for Aqua Systems, also acted as a personal assistant to Chris Sims for both business and personal matters. (Doc. 39-1 at 11; Doc. 39-5 at 2). At times, Ms. Parrish would also input payroll information and handle unemployment paperwork for Skyward employees. (Doc. 39-1 at 39). In fact, Ms. Parrish is the one who completed Mr. Campbell's employee eligibility form and signed off on his I-9 form when he began working for Skyward. (Doc. 39-4 at 28). During Mr. Campbell's

employment with Skyward, Ms. Parrish would contact him regarding employment matters. (Doc. 39-1 at 11). Mr. Campbell would speak directly to Ms. Parrish regarding work issues and provide status updates to her and Mr. Sims regarding his health condition. *Id.* at 28; (Doc. 42-4 at 12).

Mr. Campbell worked as a plumber for Skyward. (Doc. 39-1 at 29). In addition to his plumbing work, Mr. Campbell was taught how to sell, install, and test Aqua Systems water purification systems. (Doc. 42-4 at 7; Doc. 39-1 at 20).

On March 24, 2023, Skyward terminated Mr. Campbell. (Doc. 39-1 at 48). No employee of Aqua Systems was involved in the decision to terminate Mr. Campbell's employment with Skyward, (doc. 39-1 at 11), which was made by two Skyward managers and approved by Chris Sims, *id.* at 38–39. However, Skyward personnel sent statements regarding the termination to Ms. Parrish in Birmingham to place in Mr. Campbell's file. (Doc. 39-4 at 24).

After Mr. Campbell filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Skyward, Ms. Parrish, an Aqua Systems employee, drafted the response to the charge with the assistance of Asa Shelton, (doc. 39-1 at 7), a Skyward employee who sometimes performs work for Aqua Systems, *id.* at 26. Ms. Parrish and Jennifer Minkler (another Aqua Systems employee) both participated in the EEOC mediation of Mr. Campbell's claim on behalf of Skyward. *Id.* at 9; (Doc. 39-4 at 25).

It is undisputed that, if the number of employees for Skyward and Aqua Systems are aggregated, they had more than fifteen employees for more than twenty calendar weeks for both 2022 and 2023. (Doc. 39-1 at 43).

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether the movant has met this burden, courts must view the evidence in the light most favorable to the non-movant." *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Rule 56 requires the non-moving party, if it will bear the burden of proof at trial, to go beyond the pleadings and—by pointing to affidavits, depositions, answers to interrogatories, and admissions on file—designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

**ANALYSIS**

The ADA prohibits employers from discriminating against qualified individuals with a disability and requires employers to provide reasonable accommodations to qualified individuals with a disability if the employer can do so without undue hardship. Crucially, employers are only subject to the ADA if they have "15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year[.]" 42 U.S.C. § 12111(5)(a).

Per Skyward's concession at oral argument, a genuine dispute of fact exists as to whether Skyward itself, during the time relevant to Mr. Campbell's complaint, employed a sufficient number of individuals to fall within the statutory definition of "employer." It is undisputed that, if Skyward and Aqua Systems are counted as one entity, they collectively employ enough people to meet that definition. So, the question before the court is whether there is sufficient evidence to create a genuine issue concerning whether Skyward and Aqua Systems should be viewed and treated as a single "employer" under the ADA. Mr. Campbell argues that the two entities should be aggregated and treated as a single employer under the ADA because Skyward and Aqua Systems are highly integrated with respect to ownership and operations. By contrast, Aqua Systems contends that they are separate and distinct legal entities and should be treated as such.

Where two ostensibly separate entities are "highly integrated with respect to ownership and operations," a court may count them together as an integrated, single employer in determining whether they are subject to the ADA. *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987) (quoting *Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 726 (N.D. Ala. 1981), *aff'd*, 664 F.2d 295 (11th Cir. 1981)).[2] This is the Eleventh Circuit's "single employer" or "integrated enterprise" test. *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999). To determine whether two separate entities should be considered a "single employer" under the ADA, courts in the Eleventh Circuit utilize a standard developed by the National Labor Relations Board and "look to the following four criteria: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." *Walker v. Boys & Girls Club of Am.*, 38 F. Supp. 2d 1326, 1330 (M.D. Ala. 1999) (citing *McKenzie*, 834 F.2d at 933). When dealing with private entities, not every factor needs to be present, and no one factor is controlling. *Lyes*, 166 F.3d at 1341 n.5.

---

[2] Several of the cases the court relies on in its analysis and application of the "single employer" test here (and that the parties cite in their respective briefs) are Title VII cases. *See e.g., McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987); *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999). The court notes that the relevant portion of the definition of "employer" in the ADA is identical to the definition of "employer" in Title VII, and this court has previously used the same single employer test when evaluating ADA claims. *See e.g., Schultz v. Metro Truck Rental Inc.*, No. 2:18-CV-01598-CLM, 2020 WL 7211162 (N.D. Ala. Dec. 7, 2020) (analyzing Plaintiff's "single employer" argument with respect to his ADA claim).

### 1. Interrelatedness of Operations Between Aqua Systems and Skyward

In considering whether two entities are sufficiently interrelated as to qualify as a single employer under the ADA, the Eleventh Circuit considers the following factors identified by the NLRB: (1) combined accounting records; (2) combined bank accounts; (3) combined lines of credit; (4) combined payroll preparation; (5) combined switchboards; (6) combined telephone numbers; and (7) combined offices. *Walker*, 38 F. Supp. 2d at 1331.

Skyward and Aqua Systems maintain separate bank accounts and separate accounting records. They also have separate telephone numbers and office locations. However, at least one Skyward employee works out of Aqua Systems' Pelham, Alabama, office, and Skyward does not pay any rent or fee to allow that employee to do so. While their physical offices may not be combined, Mr. Campbell knew several employees who were employed by only Aqua Systems or Skyward but who were doing work for both companies. Aqua Systems and Skyward have separate accounts with the same firm to administer their payrolls, but Ms. Parrish, an accounting manager for Aqua Systems, would at times input the payroll information for Skyward employees.

Lastly, while Aqua Systems and Skyward have separate lines of credit at different banks, Aqua Systems provides loans to Skyward for various expenses. Mr. Sims estimates that Skyward currently owes Aqua Systems $300,000.00. Aqua

Systems issues credit cards to Skyward employees to allow them to cover expenses, and Skyward repays the amount owed as it is able.

In addition to these indications, the Eleventh Circuit has considered the close affiliation of two defendant companies as evidenced by their advertisement of services. *McKenzie*, 834 F.2d at 934. In *McKenzie*, the court considered how two companies marketed their services to the public in tandem, encouraging customers who were purchasing insurance from one company to utilize burial arrangements from the other. *Id.* Here, Chris Sims taught the plumbers at Skyward, including Mr. Campbell, how to sell, install, and test Aqua Systems's water purification systems. In fact, Mr. Campbell was told by Skyward that they were *only* to install Aqua Systems water purification systems.

Accordingly, for all of the reasons set forth above, there is at least some evidence of interrelatedness between Skyward and Aqua Systems.

## 2. Centralized Control of Labor Relations

The second factor of the integrated enterprise test is whether there is centralized control of labor relations. *Walker*, 38 F. Supp. 2d at 1330. "The 'control' required to meet the test of centralized control of labor relations is 'actual and active control of day-to-day labor practices.'" *Id.* at 1333 (quoting *Fike*, 514 F. Supp. at 727).

11

Here, Mr. Sims, acting as president of both Skyward and Aqua Systems, appears to control the labor relations of both companies. Specifically, Mr. Sims makes the final decisions on hiring and wages at both companies and he freely uses employees paid by Aqua Systems to assist him with Skyward's labor relations. One of the best illustrations of this is Ms. Parrish, the human resources manager at Aqua Systems who also sets new Skyward employees up and removes former employees from Skyward's payroll.

Ms. Parrish was also involved in facilitating Mr. Campbell's return to work at Skyward following a health episode. In that instance, Mr. Campbell, a Skyward employee, provided a doctor's note directly to Ms. Parrish at Aqua System's office. Then, after speaking with Mr. Sims, Ms. Parrish called Mr. Campbell and explained to him that "he was not supposed to be there, that he could not clock in, and they needed a note from his heart doctor releasing him to return to work before he could work." (Doc. 39-1 at 33; Doc. 42-4 at 12). Then, after Mr. Campbell requested that his cardiologist send a note to both Skyward and Aqua Systems's offices, Ms. Parish at Aqua Systems is the one who received it. She let Mr. Campbell know that his paperwork was acceptable and that he could return to work at Skyward the next day.

Moreover, after Mr. Campbell's termination, Ms. Parrish with Aqua Systems is one of the individuals who responded to the EEOC charge filed by Mr. Campbell against Skyward. (*See* Doc. 1-2) (providing a carbon copy of the EEOC's Dismissal

and Notice of Rights letter to Ms. Parrish). She also attended the EEOC mediation, along with another Aqua Systems employee. Thus, the undisputed facts suggest centralized control of labor relations between the two companies.

### 3. Common Management

The third factor of the integrated enterprise test is whether the two companies are subject to common management. *Walker*, 38 F. Supp. 2d at 1330. While there is not much evidence before the court regarding directors and officers of the two entities generally, Chris Sims is the president of both companies. He also controls personnel management of both companies, has the authority to sign contracts for both Skyward and Aqua Systems, and oversees the financial operations of both companies. He also has final say over what money is spent by both companies, a responsibility he shares with his wife as to Aqua Systems. With the assistance of managers, Mr. Sims oversees hiring decisions at both companies and sets wages for the employees at both companies. Therefore, there is at least some evidence in the record of common management.

### 4. Common Ownership or Financial Control

The final factor the court considers in assessing whether two businesses should be regarded as an integrated enterprise is whether they are subject to common ownership or financial control. *Walker*, 38 F. Supp. 2d at 1330. The two companies do not share common ownership. Aqua Systems is owned by Tonja Sims, while

13

Skyward is owned by Chris Sims. However, there is some evidence of financial control. Mr. Sims oversees the financial operations of both companies, including the wages set. As previously discussed, with Mr. Sims's approval, loans are made between the two companies and Skyward repays Aqua Systems as it is able.

\*    \*    \*

When this court has not found an integrated enterprise or single employment relationship between two defendant corporations, it reached that conclusion when there was "a total lack of evidence of an employment nexus between the defendant corporations." *Fike*, 514 F. Supp. at 728. That is not the case here.

The court does not reach a finding that Skyward and Aqua Systems are an integrated enterprise or single employer. But because there is some evidence of each of the four factors of the integrated enterprise or single employer test, the court finds that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue of whether the two companies are an integrated enterprise. *Anderson*, 477 U.S. at 248. Therefore, Aqua Systems motion for summary judgment is **DENIED**.

## CONCLUSION

For the reasons explained herein, Skyward and Aqua Systems' motion for summary judgment, (doc. 37), is **DENIED**.

14

**DONE** and **ORDERED** this April 24, 2026.

_____
**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE